## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JAMES RIVER INSURANCE
COMPANY,

       Plaintiff,

v.

                           Case No.:

SCCY INDUSTRIES, LLC,

       Defendant.

_____/

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff James River Insurance Company ("James River"), for its complaint against defendant SCCY Industries, LLC ("SCCY"), alleges as follows:

## NATURE OF ACTION

1.  This is an action for declaratory relief under 28 U.S.C. § 2201 to determine whether James River owes coverage under a commercial general liability insurance policy and a commercial excess liability policy that James River issued to SCCY for two lawsuits brought by municipalities for nuisance claims arising out of firearms.  As a matter of law, James River submits that it does not owe coverage because the threshold Insuring Agreements are not satisfied, among other reasons.

**JURISDICTION AND VENUE**

2.    Jurisdiction of this action is founded upon 28 U.S.C. § 1332, as the parties are citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

3.    Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), in that this action seeks a declaration of the parties' rights and obligations under contracts of insurance and the policyholder resides in Daytona Beach, Florida.

4.    All conditions precedent have occurred, been performed, or have been waived.

**PARTIES**

5.    James River is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Richmond, Virginia. For this lawsuit, James River is a surplus-lines insurer that issued a commercial general liability policy and a commercial excess liability policy to SCCY as the named insured.

6.    SCCY is a Florida limited liability company with its principal place of business in Volusia County, Florida.  In a prior proceeding, *SCCY Industries LLC v. Jannuzzo, et al*., United States District Court, Middle District of Florida (Orlando), Case No. 6:17-CV-01495, the defendants' notice of removal identifies

SCCY's sole member as Joseph Roebuck, and SCCY's own complaint in that proceeding states that Joseph Roebuck is "the owner" of SCCY. SCCY's sole member is Joseph Roebuck, and Joseph Roebuck is domiciled in Florida. Accordingly, SCCY is a citizen of Florida. For purposes of this action, SCCY was sued in the underlying actions in the State of New York over its conduct in the design, manufacturing, importing, selling, marketing and distribution of its firearm products.

## THE UNDERLYING LAWSUITS

7.    On December 21, 2022, The City of Rochester, New York ("Rochester") filed a Verified Complaint against SCCY and thirty-four (34) other defendants (collectively, "Defendants") in *The City of Rochester v. Smith & Wesson Brands, Inc., et al.*, in the Supreme Court of the State of New York, County of Monroe, Index No. E2022010581 (the "*Rochester* Complaint"). On January 24, 2023, the *Rochester* Complaint was removed to the United States District Court for the Western District of New York (Case No. 6:23-cv-06061-FPG). A copy of the *Rochester* Complaint is attached as Exhibit **A**.

8.    On December 20, 2022, The City of Buffalo, New York ("Buffalo") filed a Verified Complaint against the same Defendants in *The City of Buffalo v. Smith & Wesson Brands, Inc., et al.*, in the Supreme Court of the State of New York, County of Erie, Index No. 815602/2022 (the "*Buffalo* Complaint"). On January 23,

2023, the *Buffalo* Complaint was removed to the United States District Court for the Western District of New York (Case No. 1:23-cv-00066-FPG).  A copy of the *Buffalo* Complaint is attached as Exhibit **B**.

9.    On June 8, 2023, Case No. 6:23-cv-06061-FPG and Case No. 1:23-cv-00066-FPG were consolidated for pre-trial purposes only, with Case No. 6:23-cv-06061-FPG as the lead case.  The *Rochester* Complaint and the *Buffalo* Complaint are collectively referred to as the "Complaints."

10.    On June 8, 2023, Case No. 6:23-cv-06061-FPG and Case No. 1:23-cv-00066-FPG were stayed, and as of the filing of this action remain stayed.

11.    The Complaints allege that Defendants' conduct in the design, manufacturing, importing, selling, marketing and distribution of their firearms has created, contributed to, and maintained the public nuisance of unlawful possession, transportation and disposition of firearms and the utilization of guns in the commission of an offense by: a) marketing that emphasizes firearm characteristics such as their high capacity and ease of concealment, which appeals to prospective purchasers with criminal intent, including but not limited to through advertisement, product placement in movies and social media; b) purposely supplying more firearms than the legitimate market can bear in order to induce sales in the secondary market; c) not training dealers to avoid straw sales and other illegal transactions; and d) refusing to terminate contracts with

4

distributors who sell to dealers with disproportionately high volumes of guns traced to crime scenes.

12.    The *Rochester* Complaint and the *Buffalo* Complaint each allege that these actions have created, maintained, or contributed to a condition in Rochester and Buffalo, respectively, that endangers the safety and health of the public.

13.    The Complaints assert claims against Defendants, including SCCY, for (1) Public Nuisance under New York General Business Law ("GBL") §898-d; (2) Common Law Public Nuisance; (3) Deceptive Business Practices in Violation of GBL §349, which prohibits deceptive acts or practices in the conduct of any business, trade, or commerce in the State of New York; and (4) Deceptive Business Practices in Violation of GBL §350, which prohibits false advertising.

## THE JAMES RIVER POLICIES

14.    James River issued a primary liability policy, bearing policy no. 00103144-2, to SCCY Industries LLC for the policy period May 20, 2022-2023 (the "Primary Policy"), with a Retroactive Date of August 8, 2011.  A copy of the Primary Policy is attached as Exhibit **C**.

15.    The Primary Policy was sent to SCCY in Daytona Beach, Florida, by James River in Richmond, Virginia.

16.    The Primary Policy is a Claims-Made Commercial General Liability Policy that provides coverage pursuant to form CG 00 02 (Ed. 12 07), as

amended.

17.    The principal coverage form of the Primary Policy provides:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

   **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

   (1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

   (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   **b.**    This insurance applies to "bodily injury" and "property damage" only if:

   (1)    The "bodily injury" or "property damage" is caused by an

6

"occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

(3) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph c. below, during the policy period or any Extended reporting Period we provide under Section V – Extended Reporting Periods.

* * *

**2.    Exclusions**

This Insurance does not apply to:

**a.    Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . ..

* * *

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.    Insuring Agreement**

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. . ..

**b.**    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if:

(1)    The offense was committed in the "coverage territory";

(2)    The offense was not committed before the Retroactive Date, if any, shown in the declarations or after the end of the policy period; and

(3)    A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph c. below, during the policy period or any Extended Reporting Period we provide under Section V – Extended Reporting Periods.

\* \* \*

**2.    Exclusions**

This Insurance does not apply to:

**a.    Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b.    Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**d.    Criminal Acts**

"Personal and advertising injury" arising out of a

criminal act committed by or at the direction of the insured.

\* \* \*

## SECTION VI – DEFINITIONS

\* \* \*

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

\* \* \*

17.    "Property Damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

18.    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. . ..

18.    The Primary Policy includes several exclusions that are added by endorsements that provide:

**Exclusion -- Punitive Damages**

This insurance does not apply to:

**Punitive Damages**

Damages mean a monetary judgment, award, or settlement. Damages do not include:

    **a.**    Civil or criminal fines, sanctions or penalties, whether imposed pursuant to statute    or otherwise;

    **b.**    Judgments or awards arising from acts or omissions deemed uninsurable by law;

**c.**    The restitution of consideration or expense paid to you for professional services rendered or which should have been rendered;

**d.**    Disputed fees or any actual or alleged personal profit or advantage to which you are not legally entitled;

**e.**    Punitive or exemplary damages and the multiplied portion of multiplied damages; or

**f.**    Equitable or non-pecuniary relief.


### Fiduciary Exclusion

This policy does not apply to any claim arising out of the:

1.    Coercion, conversion or misappropriation of others' funds or property;

2.    Any dishonest, fraudulent, criminal, malicious acts or omissions of the insured, partner or employee or any person for whom you are legally responsible; or

3.    Any activities or operations performed in the capacity of a fiduciary.


### Exclusion - Business Conduct

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2.  Exclusions i. Infringement Of Copyright, Patent, Trademark Or Trade Secret** is replaced by the following:

**2.i.**    This insurance does not apply to any claim or "suit" arising out of:

(a)    any actual or alleged anti-trust law violation, unfair competition, price fixing or agreement or conspiracy to restrain trade;

(b)    any actual or alleged infringement of copyright, patent, trademark, service mark, right of publicity, slogan, trade dress, trade

secret or other intellectual property rights; whether or not in your "advertisement";

(c)    any actual or alleged false advertising, false designation of origin, product disparagement, trade libel, or other claims arising out of unfair competition, whether or not in your "advertisement";

(d)    any actual or alleged violation by any insured, or by anyone with the insured's knowledge, of any law or regulation imposing the payment of any fine, penalty or restitution arising out of the prosecution of any crime or criminal action; or any civil action arising out of such alleged criminal activity, whether or not actually prosecuted; or

(e)    any products or goods manufactured, sold, handled or distributed or work completed by the Insured or others operating under the direction or control of the Insured in violation of any law, statute or ordinance of any federal, state or municipal government, or any agencies thereof, including violations of the Lanham Act or other unfair competition statutes.

19.     James River issued an excess liability policy, bearing policy no. 00117108-1, to SCCY Industries LLC for the policy period May 20, 2022-2023 (the "Excess Policy"), with a Retroactive Date of May 20, 2021. A copy of the Excess Policy is attached as Exhibit D.

20.     The Excess Policy was also sent to SCCY in Daytona Beach, Florida, by James River in Richmond, Virginia.

21.     The Excess Policy is a Commercial Excess Liability Policy that provides coverage pursuant to form XC0002US 06-07, as amended.

22.     The principal coverage form of the Excess Policy provides:

**SECTION I –EXCESS LIABILITY INSURANCE**

**INSURING AGREEMENT:**

We will pay those sums in excess of the scheduled "underlying insurance(s)" that you become legally obligated to pay as damages because of injury or property damage to which this insurance applies, provided that the damages would be covered by the scheduled "underlying insurance(s)", or would apply but for the exhaustion of the applicable Limits of Insurance.

This policy shall follow the terms, definitions, conditions and exclusions of the scheduled "underlying insurance(s)", subject to the policy period, policy limits, premiums and all other terms, definitions, conditions and exclusions of this policy. If any provisions of the scheduled "underlying insurance(s)" conflict with any provisions of this policy, the provisions of this policy will apply.

This policy will not in any event provide broader coverage than those provided by the scheduled "underlying insurance(s)".

\* \* \*

**SECTION III –DEFENSE, INVESTIGATION AND SETTLEMENT**

The Company will have the right and be given the opportunity to participate in the investigation, defense and settlement of claims or suits against you seeking damages because of injury to which this insurance may apply. We will have a duty to defend such claims or suits when the applicable limits of insurance in the schedule of "underlying insurance(s)" has been

exhausted by payments of judgments, settlements and any costs or expenses subject to such limit. We may, at our discretion, investigate and settle any claims or suits.

\* \* \*

## SECTION V – DEFINITIONS

1.    "Underlying Insurance(s)" – means:

The policy or policies or self insurance listed in the Schedule of Underlying Insurance forming a part of this policy, any replacements or renewals thereof, provided that such replacement or renewal policy(ies) provide coverage equivalent to and afford limits of insurance equal to or greater than the policy(ies) being renewed or replaced.

\* \* \*

## SECTION VI – CONDITIONS

\* \* \*

If any conditions of the scheduled "underlying insurance(s)" conflict with any conditions of this policy, the conditions of this policy will apply.

\* \* \*

2)    **Other Insurance:**

This insurance is excess over any other valid and collectible insurance whether primary, excess, contingent, or any other basis, except any other insurance written specifically to be excess over this policy.

\* \* \*

23.    According to the Excess Policy's Schedule of Underlying Insurance, the relevant scheduled "underlying insurance" is the Primary Policy.  Thus, the Excess Policy is excess to, and follows the form of, the Primary Policy, subject to

the Excess Policy's policy period, policy limits, premiums and all other terms, definitions, conditions and exclusions of the Excess Policy.

24.    On January 17, 2023, SCCY, by its attorney and via its agent and broker, forwarded the *Rochester* Complaint to James River, advising that it was seeking coverage and would like to use The Renzulli Law Firm to represent it.

25.    On January 18, 2023, James River acknowledged receipt of the claim and sent an email to SCCY's attorney, advising that James River was performing an initial coverage investigation but that its preliminary review "reveals that the allegations may be outside of the coverage provided by the policy to the extent there is no allegation that an insured is legally obligated to pay damages because of an 'occurrence' resulting in 'bodily injury' or 'property damage' or because of 'personal and advertising injury'" and that, among other possible exclusions, the Policy's punitive damages exclusion may apply.  This email concluded by welcoming SCCY's attorney to provide any additional information he may wish and recommending that SCCY's attorney notify any other insurance carriers that might afford coverage.

26.    James River discovered the existence of the *Buffalo* Complaint through its own investigation.  SCCY has not notified James River of the *Buffalo* Complaint.

27.    On information and belief, The Renzulli Law Firm represents SCCY

with respect to the *Rochester* Complaint and the *Buffalo* Complaint.

28.     On May 22, 2024, after investigating the matter, James River notified SCCY that it had determined that there was no potential for coverage under the Primary and Excess Policies with respect to the claims asserted against SCCY in the *Rochester* Complaint or the *Buffalo* Complaint, and it was therefore declining to provide SCCY with a defense or indemnification.  James River also informed SCCY that it intended to seek a declaration of its rights and obligations from a court of law.

**COUNT I**

**NO COVERAGE UNDER THE COVERAGE A**

**INSURING AGREEMENT**

29.     James River incorporates paragraphs 1 through 28.

30.     Coverage under the Coverage A Insuring Agreement of the Primary Policy is triggered only by a "suit" against the insured seeking "damages that the insured is legally obligated to pay because of 'bodily injury' or 'property damage' caused by an 'occurrence.'"

31.     The Coverage A Insuring Agreement has not been triggered because the Complaints do not seek "damages because of 'bodily injury' or 'property damage.'"

32.     The Coverage A Insuring Agreement has also not been triggered

16

because the Complaints do not seek covered damages caused by an "occurrence."

33.     James River accordingly contends it has no duty to defend or indemnify SCCY in the Underlying Lawsuits under Coverage A of the Primary Policy.

## COUNT II

## NO COVERAGE UNDER THE COVERAGE B

## INSURING AGREEMENT

34.     James River incorporates paragraphs 1 through 33.

35.     Coverage under the Coverage B Insuring Agreement of the Primary Policy is triggered only by a "suit" against the insured seeking damages because of a "personal and advertising injury" offense arising out of the insured's business.

36.     The Coverage B Insuring Agreement has not been triggered because the Complaints do not seek any covered damages caused by a "personal and advertising injury" offense.

37.     James River accordingly contends it has no duty to defend or indemnify SCCY in the Underlying Lawsuits under Coverage B of the Primary Policy.

## COUNT III

## NO COVERAGE UNDER THE EXCESS POLICY'S

## INSURING AGREEMENT

38.     James River incorporates paragraphs 1 through 37.

39.     Coverage under the Excess Policy's Insuring Agreement is triggered only if the applicable limits of the Primary Policy have been exhausted, and there is a "suit" against SCCY seeking damages because of injury that would be covered by the Primary Policy but for the exhaustion of the applicable limits of the Primary Policy.

40.     The Excess Policy's Insuring Agreement has not been triggered because the Primary Policy's applicable limits have not been exhausted, and because the *Rochester* and *Buffalo* Complaints do not seek damages for any "property damage" or "bodily injury" caused by an "occurrence" as required by the Coverage A insuring agreement of the Primary Policy, nor because of any "personal and advertising injury" as required by the Coverage B insuring agreement of the Primary Policy.

41.     James River accordingly has no duty to defend or indemnify SCCY in the Underlying Lawsuits under the Excess Policy.

## COUNT IV

## NO COVERAGE UNDER VARIOUS POLICY EXCLUSIONS

42.    James River incorporates paragraphs 1 through 41.

43.    The Policies' Punitive Damages exclusion bars coverage to the extent the Underlying Lawsuits seek civil or criminal fines, sanctions or penalties, punitive or exemplary damages and the multiplied portion of multiplied damages, and equitable or non-pecuniary relief.

44.    The Policies' Fiduciary Exclusion bars coverage to the extent the Underlying Lawsuits arise out of "[a]ny dishonest, fraudulent, criminal, malicious acts or omissions of the insured, partner or employee or any person for whom you are legally responsible."

45.    The Policies' Expected and Intended exclusion bars coverage under Coverage A to the extent the Underlying Lawsuits allege "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

46.    The Policies' Business Conduct Exclusion precludes coverage under Coverage B to the extent the Underlying Lawsuits arise out of "any actual or alleged false advertising, false designation of origin, product disparagement, trade libel, or other claims arising out of unfair competition, whether or not in your 'advertisement'" or "any actual or alleged violation by any insured, or by anyone with the insured's knowledge, of any law or regulation imposing the

payment of any fine, penalty or restitution arising out of the prosecution of any crime or criminal action; or any civil action arising out of such."

47.     The Policies' Knowing Violation Of Rights Of Another, Material Published With Knowledge Of Falsity, and Criminal Acts Exclusions may also preclude coverage under Coverage B.

48.     James River accordingly has no duty to defend or indemnify SCCY in the Underlying Lawsuits under the Primary and Excess Policies.

## REQUESTED RELIEF

James River Insurance Company respectfully requests that this Court:

1.     Take jurisdiction and adjudicate the rights of the parties under the James River Primary and Excess Policies;

2.     Find and declare that James River has no obligation to defend SCCY in the Underlying Actions;

3.     Find and declare that James River has no obligation to indemnify SCCY in the Underlying Actions;

4.     Award James River all costs incurred to prosecute this action, as well as any other relief that this Court deems equitable, just, and proper.

Respectfully Submitted,

_/s/Carys Arvidson_

**LAURA BESVINICK**
Florida Bar No. 391158
Laura.Besvinick@ClydeCo.US
(Lead Counsel)
Clyde & Co US LLP
1221 Brickell Avenue
Suite 1600
Miami, Florida 33131
T:  305.446.2646

**CARYS ARVIDSON**
Florida Bar No. 1035888
Carys.Arvidson@ClydeCo.US
**ALEXANDER POTENTE**
_Pro Hac Vice_ Application
Forthcoming
Alex.Potente@ClydeCo.US
Clyde & Co US LLP
150 California Street
15th Floor
San Francisco, California 94111
T:  415.365.9800

_Counsel for James River
Insurance Company_